UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DIANNA DOBOS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:19-cv-251-JD |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Diana Dobos applied for social security disability insurance benefits and supplemental security income, alleging that she is unable to work because she is disabled. An ALJ found Ms. Dobos not disabled. Ms. Dobos filed a complaint asking the Court to reverse the finding and remand for further proceedings based on several alleged errors with the ALJ's decision. The matter is fully briefed and ripe for decision. [DE 14, 15, 16]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

Ms. Dobos filed for disability insurance benefits on June 3, 2016, alleging disability beginning December 16, 2014. Prior to the onset of her disability, Ms. Dobos worked as a real estate agent, mortgage loan originator, credit counselor, and construction manager. (R. 71–72). Ms. Dobos alleged disability because of reflex sympathetic dystrophy ("RSD"), emphysema, back bulging disc and protrusion stenosis pinch nerves, arthritis, hernia, ligamentum flavum and facet hypertrophy, degenerative disc disease spondylosis, tremors, migraines, and esophageal ring dilation in throat Gerd hiatal hernia. (R. 81–82). Ms. Dobos developed RSD from chronic

temporomandibular joint pain. (R. 645). In July 2015, a pain management physician, Dr. Madison, observed that Ms. Dobos required pain medication in order to perform activities of daily living. (R. 540). Her RSD pain increased in January 2016 and later that year developed mid-back spasms that triggered severe headaches. (R. 531, 527). In January 2017, Ms. Dobos began seeing pain management specialist Dr. Behzad Aalaei and his examination demonstrated positive Fortin finger test (an indication of sacroiliac pain), positive Gillet's test (to determine restrictions of movement in the sacroiliac joint), and positive pelvic rock test (to determine pain and/or mobility in the sacroiliac joint). (R. 927). To diagnose the cause of the headaches, Ms. Dobos underwent an MRI of the brain in February 2017 that reflected nonspecific focus of high T2/FLAIR signal lesion in the periventricular white matter. (R. 690–91). By April 2017, Ms. Dobos developed nearly constant stinging and burning in the back of the head that was aggravated by activity. (R. 785). In November 2017, Ms. Dobos sought treatment for lower extremity pain, swelling, cramping, and restlessness. (R. 797). Treating physician Dr. Nadira Ahmed, M.D., submitted an assessment of Ms. Dobos' functional capacity, noting several exertional and manipulative limitations. (R. 947–50). Dr. Aalaei concluded that Ms. Dobos was permanently disabled and unable to participate in any activity. (R. 959).

At the hearing in front of the ALJ, Ms. Dobos and a vocational expert ("VE") testified. Ms. Dobos testified to her symptoms stating that she suffered severe hand cramping that caused her to drop items (R. 55) and that she experienced shaking in the legs that sometimes caused her to fall (R. 59). With respect to daily living, she testified that she suffered cramps when sweeping or dusting (R. 54); she took breaks every 15-to-20 minutes while cleaning her home (*Id.*); vacuuming and bending exacerbated her pain (R. 57); she only drove once or twice a week (R. 65); and she suffered back pain after shopping for light grocery items (R. 66). The VE testified

that a hypothetical individual with Ms. Dobos' RFC could perform Ms. Dobos' past relevant work as a real estate agent, credit counselor, construction manager, and mortgage loan originator. (R. 72).

After the hearing, the ALJ issued an unfavorable decision on August 22, 2018. In that decision, the ALJ found that Ms. Dobos has the following severe impairments: spinal disorder; emphysema/chronic obstructive pulmonary disease ("COPD"); and RSD or complex regional pain syndrome ("CRPS"). (R. 17). The ALJ found that Ms. Dobos has the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs, as well as frequently balance, stoop, kneel, and crouch; she can also frequently work in extreme heat, extreme cold, humidity and wetness; she can occasionally crawl, and occasionally work in dust, odors, fumes, and pulmonary irritants, but she can never climb ladders, ropes, or scaffolds, and she is never able to work at unprotected heights.

(R. 19). The ALJ ultimately found that Ms. Dobos was not disabled at step four because she is capable of performing her past relevant work as a mortgage loan originator. The Appeals Council declined review, and Ms. Dobos filed this action seeking judicial review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision so long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Dobos has offered three arguments in support of remand. She argues that 1) the ALJ erred in weighing medical opinion evidence; 2) the ALJ erred in assessing her RFC; and 3) the ALJ erred in assessing her subjective allegations that addressed the intensity, persistence, and limiting effects of her pain and symptoms. The Court only addresses the first argument, as the Court agrees that the ALJ erred in weighing medical evidence, therefore requiring remand. The Court need not address the remaining arguments, which can be addressed by the parties on remand.

Ms. Dobos argues that the ALJ erred in affording the weight to the medical opinion of her treating physician Dr. Nadira Ahmed, M.D. Dr. Ahmed began treating Ms. Dobos in January 2013 through March 2018. (R. 409, 782). In her opinion, Dr. Ahmed opined that due to the diagnosis of CRPS/RSD, Ms. Dobos could sit for 45 minutes at one time and could stand for ten minutes at one time; could sit for a total of less than two hours in an eight-hour day and could stand and walk for a total of less than two hours in an eight-hour day; could walk half a block without rest or severe pain; required an option that permitted her to alternate between sitting, standing, and walking at will; needed to walk for ten minutes every 45 minutes; required breaks of 20 minutes every hour per eight-hour shift; needed to elevate the legs to waist level for 50 percent of the workday; could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift 20 pounds or more; could occasionally twist, stoop, crouch, and squat; could grasp, twist, and turn objects and perform fine manipulations 20 percent of the workday; could reach forward and overhead 30 percent of the workday with the right upper extremity and 35 percent of the workday with the left upper extremity; would be off-task greater than 25 percent of the workday; was incapable of performing even low-stress work; would experience good and bad days; and would be absent from work more than four days each month. Dr. Ahmed also noted

that Ms. Dobos has other limitations such as blurred vision, weather or temperature changes cause her flare ups, unable to tolerate fumes and gas due to emphysema restrictions, social anxiety, and stress.  (R. 947–50).

The opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).[1] "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ should explicitly consider the factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6) to determine the proper weight to give the opinion. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). These factors are: the examining relationship; the treatment relationship; the length of the treatment relationship; the frequency of examination; the degree to which the source presents relevant evidence to support the opinion; the consistency of the source's opinion with the other evidence; whether the source specializes in an area related to the individual's impairment; and any other factors tending to support or refute the opinion. 20 C.F.R. § 404.1527(c). An ALJ's failure to weigh medical opinion evidence pursuant to these factors mandates remand. *Gerstner*, 879 F.3d at 263. If the ALJ discounts the treating physician's opinion after considering these factors, the Court must give deference to the ALJ's decision so long as he "minimally articulate[d] his reasons." *Elder*, 529 F.3d at 416 (internal quotations omitted).

---

[1] The Commissioner has since rescinded the treating physician rule, so it applies only to claims filed before March 27, 2017. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). Ms. Dobos filed her disability claim in 2016.

The ALJ found Dr. Ahmed's medical opinion merited partial weight. (R. 22). Because he did not give this treating physician's medical opinion controlling weight, the ALJ should have explicitly considered the factors detailed above, however, he failed to do this analysis. Here, in assigning partial weight, the ALJ determined Dr. Ahmed's proposed limitations were "extreme" and "inconsistent with the record, as there is little to no objective findings to support the extent of exertional and manipulative limitation[s] opined." *Id.* The ALJ also found that because the record lacked electrodiagnostic testing to support these limitations, Dr. Ahmed's opinions are "no more than the parrotings of [Ms. Dobos'] subjective complaints." *Id.* However, this is not a sufficient explanation to support the partial weight assigned to a treating physician. Although the ALJ noted that Dr. Ahmed is Ms. Dobos' treating physician, he does not explain if or how her role as a treating physician factored into the weight he gave her opinion. The ALJ failed to consider that Dr. Ahmed physically examined Ms. Dobos. (R. 786). Dr. Ahmed treated Ms. Dobos on 10 occasions between the alleged disability onset date and when she drafted her opinion. (R. 376, 379, 382, 388, 592 782, 783, 784, 785, 786). The ALJ did not discuss the treating or examining relationship, which was five years long. (R. 409, 782). Without discussing these factors, the Court cannot determine how the ALJ considered the nature of the treatment relationship. As Ms. Dobos' treating physician for five years, who has seen Ms. Dobos on a frequent basis, Dr. Ahmed presumably possessed sufficient knowledge of Ms. Dobos' impairments to obtain a longitudinal picture of how those impairments affected Ms. Dobos' ability to perform work tasks, warranting greater weight. 20 C.F.R. § 404.1527(c)(2)(i). Failing to sufficiently explain why this was not the case here requires remand.

Not only did the ALJ fail to discuss the required analysis regarding Dr. Ahmed's opinion, but the brief rationale the ALJ did provide in his decision is not supported by substantial

evidence. While the Court recognizes that the ALJ need not discuss every piece of evidence in the record when rendering his decision, the ALJ must not "cherry-pick" evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ stated there is little to no objective findings to support Dr. Ahmed's opinion and it constituted little more than a recitation of Ms. Dobos' subjective allegations. However, the ALJ did not discuss any of the specific findings that Dr. Ahmed noted in her opinion or treatment reports. Nor did the ALJ identify any specific evidence that contradicted Dr. Ahmed's opinion or suggest that Ms. Dobos retained greater physical capabilities than what Dr. Ahmed assessed.  Dr. Ahmed opined that Ms. Dobos' symptoms and signs included increased sensitivity to touch, joint stiffness, restricted mobility, muscle spasm, impaired appetite, pain that spread to extremities, abnormal temperature sensations, muscle pain and atrophy, impaired sleep, and chronic fatigue. (R. 947). Dr. Ahmed also noted that Ms. Dobos' suffered from RSD and that this impairment produced documented signs of swelling; abnormal sweating; osteoporosis, abnormal hair growth; and changes in skin color, texture, or temperature. *Id.*

The ALJ also failed to discuss if or how he considered that Dr. Ahmed reviewed the MRI of the lumbar spine that demonstrated facet arthrosis at L2-L3; disc bulge, facet arthrosis, and hypertrophy at L3-L4; diffuse disc bulge, prominent ligamentum flavum, and lateral recess stenosis at L4-L5; and diffuse disc bulge, facet arthrosis, asymmetrical bulge or protrusion within the left neural foramina that produced impingement on the left L5 nerve root, lateral and foramina stenosis, and arthritic changes and bone edema at L5-S1. (R. 556). Additionally, Dr. Ahmed was aware of the December 2017 examination that revealed pain with range of motion of the cervical spine; increased temperature, decreased active range of motion, allodynia, decreased

9

grip strength, and skin and sudomotor changes in the right upper extremity; pain with range of motion of the lumbar spine; positive straight leg raise test but the ALJ does not cite to this evidence. (R. 808). Even though Ms. Dobos underwent right saphenous vein thermal ablation, objective medical imaging confirmed that Ms. Dobos suffered moderate-to-severe reflux in the vein calf tributaries that reasonably produced pain when Ms. Dobos stood or attempted to perform chores. (R. 812). The consultative examiner Dr. Rao noted that Ms. Dobos demonstrated diminished lumbar range of motion; spinous and paraspinous tenderness; antalgic gait; and ability to stoop and squat, get on and off of the examination table, and arise from a seated position with difficulty. (R. 597–98). However, the ALJ did not discuss how these findings were contradictory to Dr. Ahmed's opinion. The ALJ erred in failing to explain why he considered Dr. Ahmed's opinion inconsistent with other evidence of record and further ignored an entire line of evidence supporting Dr. Ahmed's opinion that is contrary to his conclusion. *See Zurawski*, 245 F.3d at 887. Lastly, while the ALJ cited a lack of electrodiagnostic testing as fatal to Dr. Ahmed's medical opinion, the ALJ cited no medical opinion or medical authority for the proposition that, for a qualified physician to assess a claimant's manipulative limitations, she needed to perform electrodiagnostic testing. In doing so, the ALJ impermissibly "played doctor" and reached his own independent medical conclusion. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

     Ms. Dobos also argues that the ALJ erred in affording the weight to the medical opinion of another treating physician, Dr. Behzad Aalaei, M.D. Dr. Aalaei began treating Ms. Dobos in January 2017 for pain management (R. 927–28) and continued to treat her through April 2018 (R. 818). Dr. Aalaei ultimately concluded that Ms. Dobos is "permanently disabled, unable to participate in any gainful activity." (R. 22). The ALJ assigned Dr. Aalaei's medical opinion little

to no weight because the opinion was "conclusory in nature and without specific limitations." *Id.* The ALJ did not explain why Dr. Aalaei's role as an examining and treating physician did not establish that his opinion merited the presumed greater evidentiary weight.

As he did with Dr. Ahmed's opinion, the ALJ failed to engage in the required analysis mandated by 20 C.F.R. § 404.1527(c). The ALJ did not even acknowledge that Dr. Aalaei was Ms. Dobos' treating physician and therefore the Court cannot be sure that his opinion was considered as such. The ALJ did not discuss the length or nature of the treatment relationship or the frequency of which Dr. Aalaei treated Ms. Dobos. The ALJ also failed to acknowledge that Dr. Aalaei examined Ms. Dobos. Prior to submitting his opinion, Dr. Aalaei treated or examined Ms. Dobos on 14 occasions. (R. 818, 824, 832, 839, 849, 854, 865, 879, 887, 891, 901, 908, 914, 927–28). The ALJ did not discuss any of Dr. Aalaei's examination reports or his findings that support his medical opinion. Dr. Aalaei's examination reports note that Ms. Dobos has left lower extremity weakness, positive Fortin finger test, Gillet's test, (R. 927), sensory loss (R. 818, 849, 865, 879, 891, 901, 914), and positive straight leg raise test. (R. 832). The ALJ did not explain whether or not he considered Dr. Aalaei's medical opinion consistent with other evidence in the record. Particularly, the ALJ did not discuss the consistency between Dr. Aalaei and Dr. Ahmed's opinions that Ms. Dobos is not physically capable to perform full-time work.

The ALJ also failed to discuss if or how he considered Dr. Aalaei's specialization. Dr. Aalaei is a board certified in both anesthesiology and pain management. (R. 928). A specialist physician's medical opinion merits greater weight than that of a non-specialist physician's opinion. 20 C.F.R. § 404.1527(c)(5). The Commissioner does not dispute that Dr. Aalaei was a specialist in treating Ms. Dobos' impairments. By failing to acknowledge that Dr. Aalaei was a specialist, the ALJ committed reversible error because he rejected the medical opinion of a

physician who specializes in treating Ms. Dobos' impairments. *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011).

Lastly, the ALJ also discounted Dr. Aalaei's opinion because the final determination concerning the conclusion of whether an individual is disabled is reserved to the Commissioner. *Id.* The Court recognizes that this is a legal determination made by the ALJ, not a medical determination. However, while a physician's opinion that a claimant is disabled or unable to work merits no special significance, a claimant's disability will ultimately depend on her physical ability to perform work tasks and medical opinion evidence that addresses this subject may not be ignored. 20 C.F.R. § 404.1527(d)(3); *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). Here, the ALJ did not provide sound reasoning in rejecting Dr. Aalaei's medical opinion. The ALJ failed to explain whether Dr. Aalaei's opinion that Ms. Dobos is disabled was supported by his treatment reports or other evidence in the record. The ALJ ignored both the record evidence that supports Dr. Aalaei's medical opinion, Dr. Aalaei's specialty, and the treating relationship between him and Ms. Dobos.

The Commissioner argues that the ALJ was not required to explicitly mention every factor in 20 C.F.R. § 404.1527(c). [DE 15 at 7]. However, the Seventh Circuit holds that "the ALJ [is] required to explicitly consider the details of the treatment relationship and explain the weight he [gave] the opinion." *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). Here, the ALJ did not do this. These considerations may lead to a different conclusion than the one reached by the ALJ when assigning Dr. Ahmed's opinion with partial weight and Dr. Aalaei's opinion with little to no weight. As explained above, to the extent the ALJ addressed one factor concerning whether an opinion was consistent with the evidence, it was not supported by substantial evidence. The ALJ's consideration and explanation of the weight given to both Dr.

Ahmed and Dr. Aalaei's opinions is inadequate. Accordingly, remand is required for the ALJ to properly weigh both Dr. Ahmed and Dr. Aalaei's opinions in the context of the record.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 13, 2020

/s/ JON E. DEGUILIO
Chief Judge
United States District Court